```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
DEXTER WASHINGTON,                                            :
                        Plaintiff,                            :
v.                                                            :     OPINION AND ORDER
                                                              :
LOUIS FALCO, Sheriff, and DAVID LOWE,                         :     20 CV 3009 (VB)
Sergeant,                                                     :
                        Defendants.                           :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Dexter Washington, proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983 against defendants Sheriff Louis Falco and Sergeant ("Sgt.") David Lowe. Liberally construed, the complaint alleges violations of plaintiff's First, Fourth, and Fourteenth Amendment rights.

Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6). (Doc #17).

For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.[1]

---

[1] Because plaintiff is proceeding pro se, "it is appropriate . . . to consider factual allegations made in [his] opposition papers, so long as the allegations are consistent with the complaint." Kelley v. Universal Music Grp., 2016 WL 5720766, at *6 (S.D.N.Y. Sept. 29, 2016). Accordingly, the Court considers factual allegations made for the first time in plaintiff's opposition to the motion to dismiss and the exhibits annexed thereto. See Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014).

1

At all relevant times, plaintiff was a pretrial detainee at the Rockland County Correctional Center ("RCCC") in New City, New York.

According to plaintiff, a number of RCCC policies violated his constitutional right to be free from cruel and unusual punishment. Plaintiff alleges the RCCC's policy of having florescent lights on from 6:00 a.m. to 10:30 p.m. and switched on and off once "every half hour for the entire night, . . . continuously disrupt[ed] and depriv[ed] plaintiff of a healthy and humane sleep pattern." (Doc. #2 ("Compl.") at ECF 5).[2] Plaintiff describes this practice as "light torture." (Id.).

Plaintiff also alleges Sheriff Falco and his administration implemented policies that "created and facilitated a dangerous environment," including a policy that required pretrial detainees to remain in their cells for sixteen hours a day and allowed them one- to three-hour periods outside their cells for recreation. (Compl. at ECF 7–8). He claims defendants perpetuated this "dangerous environment" by refusing to provide plaintiff and other pretrial detainees with "recreational equipment" such as playing cards and board games, to allow these items to be purchased through the commissary, or to be sent from friends and family. (Id.). Similarly, plaintiff alleges Falco and his administration refused to provide plaintiff and other pretrial detainees with reading material from a library or book cart. Finally, plaintiff claims the administration "waged a dietary war" against the pretrial detainees by refusing to provide or allowing them to purchase coffee or tea. (Id. at 9).

Next, plaintiff alleges Sheriff Falco replaced the traditional law library facility with two multi-purpose kiosk wall units. According to plaintiff, the machines are constantly in use by the

---

[2]   "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing System.

RCCC's forty detainees for various activities, including, inter alia, text messaging, chaplain requests, medical requests, and commissary purchases.

Plaintiff also alleges that under RCCC's strip search policy, officers are permitted to strip search pretrial detainees during cell searches, after pretrial detainees return from court, and after receiving visitors. Plaintiff alleges:

> During such searches plaintiff and other pretrial detainees are directed to strip naked, run their hands through their mouth (even in cases where plaintiff did not have an opportunity to wash his hands during the day, behind an[d] in their ears, for guys with hair, through their hair, under the arm pits, and then the officer directs you to reach between your legs an[d] life your testicles up for inspection, and in the case of an uncircumcised penis, you are directed to "skin it back until the raw head of the penis is exposed." Next you are made to lift both feet until the toes are fully inspected.

(Compl. at ECF 13). Plaintiff claims these searches occur in the early morning, the afternoon, and sometimes at 2:00 a.m. or 3:00 a.m., when the detainees are sleeping.

Plaintiff also claims Sheriff Falco and his administration have failed "to create a media review process to safeguard incoming and outgoing personal and legal mail." (Compl. at ECF 14). He claims that on various occasions, his mail was delivered to him opened and by an unknown officer. According to plaintiff, "[h]e along with many other pretrial detainees have repeatedly been the victim of allegedly lost personal and/or legal mail." (Id. at ECF 15).

Finally, plaintiff alleges he received a disciplinary infraction for allegedly having fruit in his cell in violation of facility rules. Plaintiff claims he was sentenced to a ten-day cell confinement in a segregated area specifically reserved for cell-confined pretrial detainees. According to plaintiff, his disciplinary time assessment form stated his release date went beyond ten days. Plaintiff claims that when he brought the excessive time to Sgt. Lowe's attention, Lowe responded that there was no error because it was his "personal policy to 'never' release a person on the day an[d] exact time of their release especially if that said release is in the early

part of that said day." (Compl. at ECF 17). Plaintiff alleges he filed a grievance concerning the policy of "confining pretrial detainees beyond their 'agreed upon' disciplinary sanctions." (Id.). Plaintiff claims the grievance was denied by the grievance supervisor, who stated: "Sergeant Lowe's actions [were] not grievable." (Id.).

## DISCUSSION

I.   Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).³ Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Ashcroft v. Iqbal, 556 U.S. at 670.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

---

³ Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.   Exhaustion

Defendants argue the complaint should be dismissed because plaintiff fails to allege that he fully exhausted his administrative remedies prior to filing this lawsuit.

The Court disagrees.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [Section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

"Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." Williams v. Corr. Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016). "Accordingly, inmates are not required to specially plead or demonstrate exhaustion in their complaints." Id. Thus, when "a prisoner indicates that he has taken some steps toward

exhaustion, district courts will normally not infer from his silence that he failed to take the remaining steps that full exhaustion would require." Huggins v. Schriro, 2015 WL 7345750, at *3 (S.D.N.Y. Nov. 19, 2015), report and recommendation adopted, 2016 WL 680822 (S.D.N.Y. Feb. 18, 2016).[4] "However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." Williams v. Corr. Officer Priatno, 829 F.3d at 122.

Construing all inferences in plaintiff's favor, it is not clear from the face of the operative complaint that plaintiff failed to fully exhaust his administrative remedies. To the contrary, plaintiff makes numerous statements in the complaint regarding his use of RCCC's grievance system.

Accordingly, at this early stage of the proceedings, the Court will not dismiss plaintiff's claims for failure to exhaust his administrative remedies.

III.   Due Process Claims

Liberally construed, the complaint presents two Fourteenth Amendment claims: first, challenging the conditions of plaintiff's confinement in violation of his right to substantive due process, and second, alleging Sgt. Lowe violated plaintiff's procedural due process rights by unilaterally increasing plaintiff's punishment for a disciplinary infraction without additional due process proceedings.[5]

---

[4]   Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[5]   The complaint is organized into six causes of action, alleging various RCCC policies and one personal policy of Sgt. Lowe's violated plaintiff's constitutional right not to be subjected to cruel and inhumane treatment. However, plaintiff's claims also implicate his First and Fourth Amendment rights. See infra Sections IV-VI.

A. <u>Substantive Due Process</u>

1. <u>Legal Standard</u>

A condition-of-confinement claim brought by a pretrial detainee is analyzed under the Due Process Clause of the Fourteenth Amendment, rather than under the Cruel and Unusual Punishments Clause of the Eighth Amendment, because "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." <u>Darnell v. Pineiro</u>, 849 F.3d 17, 29 (2d Cir. 2017). Under the Fourteenth Amendment, "the proper inquiry is whether [the] conditions [of confinement] amount to punishment of the detainee." <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979). If the conditions are deemed not punitive, then the plaintiff's allegations are evaluated under a standard of deliberate indifference. <u>Abreu v. Schriro</u>, 2016 WL 3647958, at *4 (S.D.N.Y. July 1, 2016).

2. <u>Restrictive and Punitive Conditions</u>

Pretrial detainees retain a liberty interest in avoiding restrictions or conditions of confinement that "amount to punishment of the detainee." <u>Bell v. Wolfish</u>, 441 U.S. at 535. "[I]n assessing whether restrictions on pretrial detainees comport with substantive due process, 'a court must decide whether the restriction is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" <u>Allah v. Milling</u>, 876 F.3d 48, 55 (2d Cir. 2017) (quoting <u>Bell v. Wolfish</u>, 441 U.S. at 538). "Absent proof of intent to punish, 'that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.'" <u>Id</u>. (quoting <u>Bell v. Wolfish</u>, 441 U.S. at 538).

It is well settled that "the government has a legitimate interest in the security of prisons, and that prison officials should be afforded deference in the adoption and execution of policies

7

and practices . . . needed to preserve internal order and discipline and to maintain institutional security." Allah v. Milling, 876 F.3d at 55. Additional objectives that could justify the imposition of restrictive conditions on pretrial detainees include "mak[ing] certain no weapons or illicit drugs reach detainees," "ensuring a detainee's presence at trial," and "manag[ing] the facility in which the individual is detained." Bell v. Wolfish, 441 U.S. at 540.

Here, plaintiff fails plausibly to allege the challenged conditions of his confinement were punitive in nature. Specifically, plaintiff contends the following policies were restrictive and punitive: (i) RCCC's lighting policy; (ii) the policy confining detainees to their cells for sixteen hours a day and distributing the remaining eight hours for recreation in one- to three-hour increments; (iii) RCCC's refusal to provide recreational equipment such as playing cards, board games, or reading material; and (iv) RCCC's refusal to provide or allow pretrial detainees to receive or purchase coffee or tea. Plaintiff does not, however, allege any facts suggesting defendants implemented these policies with punitive intent. Rather, he claims the RCCC's practices and policies were enforced against him and "hundreds of other pretrial detainees." (Compl. at ECF 7); see Abreu v. Schriro, 2016 WL 3647958, at *5 (finding no punitive intent alleged where "lockdowns did not target Plaintiff, but rather affected all inmates in the housing unit").

In addition, plaintiff fails plausibly to allege the challenged policies "are [not] rationally related to a legitimate nonpunitive governmental purpose" or that the actions "appear excessive in relation to that purpose." Bell v. Wolfish, 441 U.S. at 561. Plaintiff's conclusory allegation that these policies were not imposed for any "viable penological goals or interest" (Compl. at ECF 1, 3), overlooks the RCCC's legitimate interest in maintaining security and order, ensuring no weapons or illicit drugs reach detainees, and managing the facility. See Bell v. Wolfish, 441

U.S. at 540, 554–55 (prohibiting personal packages did not deny pretrial detainees due process since detention center had legitimate interest in reducing risk of gambling, theft, inmate fights, and smuggling of contraband).  Because the legitimate government interests as to the challenged policies are clear and the challenged conditions and restrictions are not so extreme that they "smack[] of punishment," the Court need not conduct a "factual inquiry into whether such . . . restriction[s] [are] actually related to a legitimate governmental interest." Valdez v. City of N.Y., 2014 WL 2767201, at *2 (S.D.N.Y. June 17, 2014) (citing Covino v. Vermont Dept. of Corrections, 933 F.2d 128, 130 (2d Cir. 1991)).

Accordingly, plaintiff fails plausibly to allege the challenged conditions of his confinement were punitive in nature.

### 3. Deliberate Indifference to Conditions of Confinement

Plaintiff also fails plausibly to allege defendants were deliberately indifferent to the conditions of his confinement.

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." Darnell v. Pineiro, 849 F.3d at 29.  To state such a claim, plaintiff's allegations must satisfy two prongs:  an objective prong and a mens rea prong.  Namely, plaintiff must plausibly allege "that the challenged conditions were sufficiently serious," and defendants "acted with at least deliberate indifference to the challenged conditions." Id.

To plead the objective prong, a pretrial detainee must plausibly allege the challenged conditions, "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health." Darnell v. Pineiro, 849 F.3d at 30 (quoting Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013)).  There is no "'static test' to determine whether a deprivation is sufficiently serious;

9

instead, the 'conditions themselves must be evaluated in light of contemporary standards of decency.'" Id. (quoting Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995)).  Although "the Constitution does not mandate comfortable prisons, prisoners are entitled to basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety."  Randle v. Alexander, 960 F. Supp. 2d 457, 474–75 (S.D.N.Y. 2013).  In addition, courts have held that "sleep is critical to human existence" and conditions which deprive a person of sleep may rise to the level of a constitutional violation.  Walker v. Schult, 717 F.3d at 126.

To plead the mens rea prong, a pretrial detainee must plausibly allege "that the defendant-official acted intentionally . . . , or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known," of the risk.  Darnell v. Pineiro, 849 F.3d at 35.  The Fourteenth Amendment's mens rea prong "is defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm."  Id.  Mere negligence by the prison official, however, does not satisfy the mens rea requirement.  See id. at 36.

First, with respect to RCCC's lighting policy, plaintiff has sufficiently alleged the objective prong. At this early stage, plaintiff's allegation that the policy of turning on the lights for a brief period every half hour for the entire night caused him to suffer "continuous sleep deprivation" (Compl. at ECF 5), sufficiently alleges the policy posed an "unreasonable risk of serious damage" to his health.  Darnell v. Pineiro, 849 F.3d at 30.

However, plaintiff's allegations that the lighting policy constituted torture and "deprived [him] of a healthy and humane sleep pattern" (Compl. at ECF 5) do not plausibly plead the mens rea prong of the deliberate indifference analysis.  Specifically, plaintiff pleads no facts to

demonstrate defendants consciously or recklessly disregarded a serious risk of harm by implementing a lighting policy that switched lights on once every half hour, or that, even without any subjective awareness, that policy exposed plaintiff to a substantial risk of harm. Further, although plaintiff alleges "defendant Louis Falco, [was] grossly negligent" in "maintaining and causing [the RCCC's lighting policy] to be enforced upon plaintiff and hundreds of other pretrial detainees" (Doc. #7), as noted above, mere negligence is insufficient to establish the requisite mens rea to support a deliberate indifference claim.

Next, plaintiff's allegation that defendants were deliberately indifferent to the conditions of his confinement—by implementing policies that: (i) confined pretrial detainees to their cells for sixteen hours a day and distributed the remaining eight hours for recreation in one- to three-hour increments; (ii) deprived pretrial detainees of recreational equipment such as playing cards, board games, or reading material; and (iii) denied pretrial detainees coffee or tea—fails to satisfy the objective prong of the deliberate indifference analysis.[6] None of the alleged conditions deprived plaintiff of his "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—[nor did] they . . . expose[] him to conditions that pose[d] an unreasonable risk of serious damage to [plaintiff's] future health." Darnell v. Pineiro, 849 F.3d at 20. Because plaintiff has failed plausibly to allege these conditions of his confinement posed an unreasonable

---

[6] Although plaintiff alleges RCCC's use of multi-purpose kiosk units in lieu of a traditional law library, strip search policy, and failure to safeguard incoming and outgoing personal and legal mail also violate his Fourteenth Amendment rights, such claims are more properly considered under the First and Fourth Amendments, as discussed infra sections IV-VI. To the extent plaintiff alleges such policies constituted cruel and inhuman treatment in violation of his Fourteenth Amendment rights, such claims fail because plaintiff pleads no facts suggesting such policies were punitive or deprived him of any basic human needs.

risk of serious damage to his health or safety, the Court need not reach the question of whether plaintiff's allegations regarding these conditions satisfy the mens rea prong of the analysis.[7]

Accordingly, plaintiff's conditions of confinement claim must be dismissed.

B.      Procedural Due Process Claim

Defendants argue plaintiff fails plausibly to allege he was denied procedural due process in violation of the Fourteenth Amendment.

The Court disagrees.

Procedural due process requires "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010). Thus, to establish a violation of due process rights, a plaintiff must show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).

Pretrial detainees have a liberty interest in being free from punishment prior to conviction under the Due Process Clause. Bell v. Wolfish, 441 U.S. at 535. Thus, when a restriction is placed on a pretrial detainee for disciplinary reasons, "[p]rocedural due process requires that a pretrial detainee be given written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence before being subjected to punitive as opposed to administrative measures." Allah v. Milling, 876 F.3d

---

[7] Plaintiff also alleges Sheriff Falco misappropriated prison funds by failing to provide pretrial detainees basic recreational equipment or coffee and tea. This conclusory allegation is insufficient to state a claim upon which relief may be granted. That the prison did not spend money as plaintiff desired does not give rise to a cause of action under the Fourteenth Amendment.

12

at 55 n.3.  However, when a restriction is imposed for nonpunitive or administrative reasons, a pretrial detainee is entitled only to "receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to impose the restraint."  Taylor v. Santana, 2007 WL 737485, at *4 (S.D.N.Y.2007), aff'd sub nom. Taylor v. Comm'r of N.Y.C. Dept. of Corrs., 317 F. App'x 80 (2d Cir. 2009).

Here, plaintiff alleges he received a disciplinary infraction for having fruit in his cell in violation of facility rules.  Plaintiff claims he was sentenced to a ten-day cell confinement in a segregated area specifically reserved for cell-confined pretrial detainees.  But plaintiff does not allege he was denied due process with regard to that ten-day confinement.  In fact, he acknowledges he "was provided with written notice of the alleged charges[,] the resulting time assessment attached thereto[,]" and suggests that he received a hearing which led to the ten-day time assessment.  (Doc. #29 ("Pl. Sur-Reply") at ECF 3).

Rather, plaintiff alleges Sgt. Lowe violated plaintiff's procedural due process rights by unilaterally increasing his punishment for a disciplinary infraction "without further legitimate disciplinary proceedings."  (Doc. #24 ("Pl. Opp.") at ECF 4).  Specifically, plaintiff claims Sgt. Lowe extended plaintiff's disciplinary confinement "because it is [Lowe's] personal policy to 'never' release a person on the day an[d] exact time of their release especially if that said release is in the early part of that said day[.]"  (Compl. at ECF 17).  Plaintiff also alleges he informed Sgt. Lowe that Sgt. Lowe was "exceeding his authority," and Sgt. Lowe responded:  "I could do as I please."  (Pl. Opp. at ECF 5).

Plaintiff has pleaded—albeit barely—a procedural due process claim against Sgt. Lowe for the additional time he spent in a housing unit "specifically reserved for cell-confine[d] pretrial detainee[s]" (Compl. at ECF 14) without additional due process.  Plaintiff has adequately

13

alleged both that his confinement was punitive and that he did not receive <u>additional</u> procedures prior to the increase in his disciplinary sentence.  Defendants neither argue otherwise nor suggest the additional time plaintiff spent in the disciplinary segregation unit was "incident of some other legitimate governmental purpose."  <u>Bell v. Wolfish</u>, 441 U.S. at 538.

Rather, defendants argue plaintiff was afforded the process he was due during the initial proceedings and characterize plaintiff's procedural due process allegation as "merely alleg[ing] that his ten-day cell confinement was slightly longer than the agreed upon ten (10) days."  (Doc. #20 at ECF 37).  Defendants miss the point and fail to address whether plaintiff's additional confinement was punitive or administrative, or whether plaintiff was afforded additional due process for his continued confinement.

Plaintiff has adequately alleged he was denied procedural due process with respect to the additional confinement.  Nothing on the face of the complaint—which the Court accepts as true—suggests this additional confinement was for merely administrative reasons, and reading the complaint in the light most favorable to plaintiff the allegations are sufficient to plead a claim for a violation of procedural due process.

Accordingly, plaintiff's procedural due process claim against Sgt. Lowe may proceed.

IV.     <u>Denial of Access to the Courts Claim</u>

Plaintiff's alleges Sheriff Falco's decision to replace the facility's law library with two multi-purpose kiosks denied plaintiff access to a law library.  The Court liberally construes this allegation as a claim for denial of access to the courts.  Defendants argue plaintiff fails to state such a claim.[8]

---

[8]     The source of the constitutional right of access to the courts "has been variously located in the First Amendment right to petition for redress, the Privileges and Immunities Clause of

The Court agrees.

Although prisoners are guaranteed reasonable access to a law library as a part of their constitutional right of meaningful access to the courts, "the Constitution does not require unlimited and unrestricted access to a law library at the demand of a prisoner." Oliver v. Head Sherriff of Dep't & Div. of Corr. of Nassau Cnty., 2008 WL 238577, at *2 (E.D.N.Y. Jan. 28, 2008). Allegations of delays affecting research or communication with the courts do not violate this constitutional right. Jermosen v. Coughlin, 1995 WL 144155, at *5 (S.D.N.Y. Mar. 30, 1995). Furthermore, to state a claim, plaintiff must plausibly allege a defendant caused plaintiff to suffer "actual injury." Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003). To establish actual injury, the denial must have hindered the plaintiff's efforts in pursuing a nonfrivolous legal claim. See Amaker v. Haponik, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999).

Here, plaintiff fails to allege an actual injury. Although plaintiff alleges the facility's switch from traditional law library services to kiosk units denied him his right to a law library because the new kiosk system was overcrowded and difficult to access, he fails to allege he suffered any actual injury during his pursuit of legal relief. For instance, plaintiff does not allege which specific, nonfrivolous legal challenges were affected by his inability to access the kiosks; which particular deadlines, if any, he missed due to such actions; or what specific documents, such as motions or pleadings, he was prevented from filing. Plaintiff does claim "many pretrial detainees into the hundreds, have been sentenced to many years and sometime life, in state prison simply because they didn't have the necessary legal tools to effectively represent themselves at the pretrial and trial stages of the said case." (Compl. at ECF 11). However, this

---

Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments." Crosby v. Petermann, 2020 WL 1434932, at *11 (S.D.N.Y. Mar. 24, 2020).

15

conclusory allegation is insufficient to plead plaintiff, as distinguished from some other person, suffered an actual injury as a result of defendants' actions.

Accordingly, plaintiff's denial of access to the courts claim must be dismissed.

V.      Cavity Strip Search Claim

Liberally construed, plaintiff alleges RCCC's strip search policy—implemented by Sheriff Falco—of conducting routine strip searches of pretrial detainees during cell searches, upon pretrial detainees' return from court appearances, and after receiving visitors, violates his Fourth Amendment right to be free from unreasonable searches and seizures.

The Supreme Court has recognized a constitutional "right of personal privacy, or a guarantee of certain areas or zones of privacy." Roe v. Wade, 410 U.S. 113, 152 (1973). Inmates retain this constitutional guarantee, but only within limited circumstances. See Harris v. Miller, 818 F.3d 49, 57 (2d Cir. 2016). "There is a long-established principle that the routine, random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment." Vaughn v. Strickland, 2013 WL 3481413, at *4 (S.D.N.Y. July 11, 2013). Nevertheless, "the Fourth Amendment still requires all searches conducted within a prison, including strip searches, to be reasonable.'" Jean-Laurent v. Wilkerson, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), aff'd, 461 F. App'x 18 (2d Cir. 2012) (summary order).

The reasonableness of a strip search is determined by considering "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell v. Wolfish, 441 U.S. at 559. "[S]trip searches performed with no legitimate penological purpose but merely to intimidate, harass, or punish are impermissible." George v. City of N.Y., 2013 WL 5943206, at *7 (S.D.N.Y. Nov. 6, 2013). A search justified by a legitimate penological interest may "become unreasonable where [it] is

16

conducted in an abusive manner or in the presence of unnecessary spectators." Sankara v. Plaskett, 2017 WL 4444250, at *3 (S.D.N.Y. Oct. 4, 2017) (citing Bell v. Wolfish, 441 U.S. at 560).  It is well established that "[t]he general practice of strip searching a detainee during housing searches and on the way to and from court appearances is not unconstitutional." Thompson v. City of N.Y., 2017 WL 1929552, at *2 (S.D.N.Y. May 9, 2017) (collecting cases).

Plaintiff fails plausibly to allege RCCC's strip search policy is unconstitutional. Plaintiff does not allege the strip search policy, or a particular strip search, was conducted with the intent to humiliate, harass, or abuse.  Absent such allegations, the searches described by plaintiff are permissible because they serve RCCC's legitimate interest of preventing prisoners reentering the facility from bringing hidden contraband into and out of the facility or concealing contraband on their person.  See George v. City of N.Y., 2013 WL 5943206, at *8.

Plaintiff's argument that the strip searches were unreasonable because "there is no rational or logical basis" (Pl. Sur-Reply at ECF 3) for having a female officer present is unavailing.  As discussed above, a search may become unreasonable where it is conducted in the presence of unnecessary spectators.  Sankara v. Plaskett, 2017 WL 4444250, at *3.  However, the mere presence of a female officer during a strip search "does not alter th[e] determination" that a strip search is constitutional.  Israel v. City of N.Y., 2012 WL 4762082, at *3 (S.D.N.Y. Oct. 5, 2012).

Accordingly, plaintiff's Fourth Amendment claim for unreasonable search and seizure must be dismissed.

VI.     Interference with Mail Claim

Defendants argue plaintiff fails to state a claim for interference with mail.

The Court agrees.

Allegations that a defendant has interfered with the free flow of mail are analyzed under the First Amendment. To state an interference with mail claim, plaintiff must adequately plead defendants "regularly and unjustifiably interfered" with his incoming mail. Davis v. Goord, 320 F.3d at 351. Prison officials may censor an inmate's mail only in furtherance of, and only to the extent "necessary or essential" to protect the government's interest in security, order, or rehabilitation. Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986). Although one isolated instance of mail tampering does not amount to a constitutional violation, "as few as two [such] incidents . . . could constitute an actionable violation," provided the incidents (i) "suggested an ongoing practice" of unwarranted censorship, or (ii) "unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." Davis v. Goord, 320 F.3d at 351. That said, "district courts have generally required specific allegations of invidious intent or of actual harm where the incidents of tampering are few and thus the implication of an actionable violation is not obvious on its face." Id.

Here, plaintiff does not plausibly allege either defendant tampered with plaintiff's mail with "invidious intent" or caused plaintiff to suffer "actual harm." Davis v. Goord, 320 F.3d at 351–52. Aside from noting Sheriff Falco and his administration "fail[ed] to create a media review process to safeguard incoming and outgoing personal and legal mail" (Compl. at ECF 14), the complaint contains no allegations suggesting either defendant withheld or tampered with plaintiff's mail—with invidious intent or otherwise.

Further, plaintiff identifies no specific injury suffered sufficient to survive a motion to dismiss. Indeed, plaintiff's conclusory allegation that "he along with many other pretrial detainees have repeatedly been the victim of allegedly lost personal and/or legal mail" (Compl. at ECF 15), lacks any factual support to state a viable mail-tampering claim. Plaintiff also

18

asserts he "is injured every time his legal mail is opened" by a correction officer who is "at liberty to read its content and share it amongst themselves and even some cases with, or in the presence of other inmates." (Doc. # 29 at ECF 3). Plaintiff does not allege any defendant did in fact read his legal mail; he alleges only that any correction officer is at liberty to do so. This allegation is nothing more than unsubstantiated speculation and is insufficient to allege a First Amendment mail-tampering claim.

Accordingly, plaintiff's First Amendment interference with mail claim must be dismissed.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's Fourteenth Amendment procedural due process claim against Sgt. David Lowe shall proceed. All other claims are dismissed.

By March 15, 2021, defendant Lowe shall file an answer. By separate order, the Court will schedule an initial conference in this matter.

The Clerk is instructed to terminate Sheriff Louis Falco as a defendant in this action.

The Clerk is further instructed to terminate the motion. (Doc. #17).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis is denied for the purposes of any appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: March 1, 2021
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge